

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00053-CR

JEFFERY LAWRENCE HARTMANN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Marion County, Texas
Trial Court No. F 15297

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Jeffery Lawrence Hartmann was convicted of indecency with a child by sexual contact and was sentenced to twenty years' imprisonment. In his sole point of error on appeal, Hartmann argues that the evidence is legally insufficient to support his conviction. Because we find the evidence sufficient, we overrule Hartmann's sole point of error and affirm the trial court's judgment.

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational [fact-finder] could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the [fact-finder] 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). Here, the State alleged and was required to prove that Hartmann, with intent to gratify his sexual desire, intentionally or knowingly engaged in sexual contact with Jane Doe, a child younger than seventeen, "by touching [her] breast and genitals." *See* TEX. PENAL CODE ANN. § 22.011(a)(1).

Jane,[1] who was fourteen at trial, testified that she had been sexually molested by a man, whom she said was in the courtroom. When asked to identify the perpetrator, Jane pointed to Hartmann in open court. Jane testified that Hartmann married her close relative, lived with them from the time Jane was four years old, and started molesting Jane when she was seven. When asked how many times Hartmann had molested her, Jane said, "More than 30."

According to Jane, Hartmann would touch her with his hands both over and underneath her clothes on her breast, legs, and vagina. Jane clarified that Hartmann would touch her vagina under her panties and would rub it and would also "squeeze[]" her breast. On another occasion, Jane said Hartman "grabbed [her] butt" and squeezed it over her clothing. Jane recalled another instance where Hartmann "started touching her private part under [her] clothes" and remembered that, when she was eleven, Hartmann made her touch his penis with her hand underneath his clothing. Jane testified that the abuse continued until she was twelve when Hartmann "had his mouth on [her] boob" and her mother "caught [Hartmann] sexually molesting [her] in the living room."

---

[1]We use pseudonyms for the child victim and her mother to protect the child's privacy. *See* TEX. R. APP. P. 9.10(a)(3).

Jane's mother, Jill, testified that, on May 7, 2020, she woke up earlier than normal and found Jane and Hartmann in the living room. According to Jill, Hartmann "leaned over [Jane], and he was moving his head like he was kissing on [Jane's] breast." When Jill asked what was going on, Hartmann "whipped around with big eyes" and claimed that he was looking at a spider bite. Jane, who said nothing at the time, denied at trial that she had had a spider bite on that occasion.

Jill continued to question Hartmann and testified that, "a week or so [after questioning], [Hartmann] finally admitted to what had happened." According to Jill, Hartmann tried to "downsize it" by saying, "I don't know what all the fuss is over. It was just a tit lick." Jill said that Jane seemed embarrassed and did not know what to say but eventually "admitted to the event that [Jill] had witnessed." Jill said she was "[v]ery shocked and disgusted and quite unsure [of] what steps to take." When Jill and Hartmann decided to divorce, Jill reported the incident to the police.[2]

Alisha Riehl, a peace officer with the Marion County Sheriff's Office, testified that, on July 27, 2020, Jill reported that the incident she witnessed had occurred on May 7. According to Riehl, Jill said Hartmann "was sucking on her daughter's breast." Jill admitted that it took her a long time to report the incident because she was experiencing financial issues and did not know what to do. Riehl testified that Jane made an outcry of sexual contact during a Child Advocacy Center (CAC) interview. According to Riehl, Jane reported that, "[f]or one or two months[,] [Hartman] was touching on her breast, vagina, and her butt."

---

[2]The divorce was finalized before trial.

4

Christi Glenn-Moore, the local CAC program director, testified that Jane was interviewed by Misty Powers, who no longer worked for the CAC. The CAC interview, which was admitted into evidence, showed that Jane told Powers that Hartmann "would touch [her] where [she] didn't want to be touched," including her "butt, boobs, and private spot," which she identified as her vagina, both over and under her clothes. Jane, who described several other instances of touching, told Powers that the abuse had been occurring "for a month or two" and denied that anything had occurred before that time. After hearing that evidence, the trial court found Hartmann guilty.

"The testimony of a child victim alone is sufficient to support a conviction for . . . indecency with a child." *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 38.07). Jane's testimony at trial showed that Hartmann intentionally or knowingly engaged in sexual contact with her by touching her breast and genitals. From the evidence, the fact-finder was free to infer that Hartmann touched Jane with the intent to gratify his sexual desire. As a result, Jane's testimony was legally sufficient to support all the elements of the offense. *See* TEX. PENAL CODE ANN. § 22.011(a)(1).

Hartmann notes that Jane's CAC interview, in which she said the abuse had only been occurring for a month or two, was different than her testimony that the abuse had been occurring since she was seven. Hartmann also notes that Jane's outcry was delayed and that Jill waited until deciding on divorce to report the incident to the police. According to Hartmann, these facts and inconsistencies cast doubt as to the credibility of Jane's testimony. Yet, the fact-finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their

5

testimony. *Brooks*, 323 S.W.3d at 899. Although Jane's CAC interview and trial testimony did contain inconsistencies, she was consistent about Hartmann touching her breast and vagina both inside and outside of her clothing.

After reviewing the evidence presented at trial, we find the evidence legally sufficient to support Hartmann's conviction for indecency with a child by sexual contact. As a result, we affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     November 18, 2022
Date Decided:       November 22, 2022


Do Not Publish